UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| TERESA BECHARD,<br><br>                    Plaintiff,<br><br><br>          vs.<br><br><br>AIU INSURANCE COMPANY,<br>WALMART CLAIMS SERVICES, INC.,<br><br>                    Defendants. | 4:25-CV-04005-CCT<br><br><br>ORDER DENYING IN PART AND<br>GRANTING IN PART PLAINTIFF'S<br>MOTION TO COMPEL<br><br>Docket No. 17 |

**INTRODUCTION**

In this action plaintiff Teresa Bechard complains defendants have handled her worker's compensation claim in bad faith and engaged in civil conspiracy.  See Docket No. 1.  Jurisdiction is premised on the diverse citizenship of the parties and an amount in controversy over $75,000.  Id.

Plaintiff now moves the court to enter an order compelling  discovery. See Docket No. 17.  Defendants resist the motion.  See Docket No. 21.  The district court referred the motion to this magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and DSD LR 72.1.  See Docket No. 20.

## FACTS

### A.    Basis of Plaintiff's Claims

The following facts are taken from plaintiff's complaint to give context to the motion.  The court does not suggest they are true.

Plaintiff slipped and fell on ice in the parking lot of Walmart, Inc. in Rapid City, South Dakota, while working for Walmart.  She hit her neck and back.  She alleges she immediately experienced pain in her back, neck, shoulders and legs.  Plaintiff made a claim for worker's compensation benefits.

Although defendants initially paid benefits on plaintiff's claim, when plaintiff's surgeon, Dr. Robert Woodruff, recommended surgery, they contacted him on September 23, 2022.  Dr. Woodruff told defendants that plaintiff had not mentioned neck or arm symptoms for over four months after the injury so, in the doctor's opinion, plaintiff's neck surgery was not related to her work injury.[1]  Plaintiff asserts that defendants manufactured this medical opinion by withholding the first two months of plaintiff's post-injury records from Dr. Woodruff prior to asking him to give them an opinion.

Plaintiff proceeded with her neck surgery.  Defendants denied coverage for the surgery as well as any further treatment in late December 2022.[2]  Plaintiff then contacted Dr. Woodruff in March 2023 and obtained a revised opinion from Dr. Woodruff that plaintiff's fall at her employer's workplace was a

---

[1] Walmart Claims indicates Dr. Woodruff conveyed this opinion to it in a letter dated September 30, 2022.  <u>See</u> Docket No. 19-3 at 8.

[2] Walmart Claims indicates it notified plaintiff via letter on October 4, 2022, that her neck injury was not compensable.  <u>See</u> Docket No. 19-3 at 8.

major contributing factor to her neck condition.  Plaintiff also provided
defendants with a June 23, 2023, opinion from Dr. Lance Doeden that agreed
with Dr. Woodruff's opinion.

Six days after Dr. Doeden's letter, plaintiff filed a petition with the South
Dakota Department of Labor (SD DOL) seeking workers compensation benefits.
Defendants obtained an independent medical exam (IME) of plaintiff from
Dr. Thomas Ripperda during the pendency of DOL proceedings.  On May 9,
2024, Dr. Ripperda opined that plaintiff's workplace injury was a major
contributing factor to her neck condition.  Defendants then filed an amended
answer to plaintiff's DOL petition admitting liability.  The SD DOL issued a
decision June 28, 2024, in plaintiff's favor.  This lawsuit followed.

**B.    Facts Relating to the Discovery Dispute**

Plaintiff served both defendants with interrogatories and requests for the
production of documents (RFPs).  Responses to those discovery requests from
each defendant were served on plaintiff May 16, 2025.  See Docket Nos. 19-1 to
19-4.  Defendant Walmart Claims Services, Inc. (Walmart Claims) also
submitted a privilege log on the same date.  Docket No. 19-10.

**1.    AIU's Discovery**

**a.    Plaintiff's Assertion of Deficiencies**

On June 6, plaintiff's counsel wrote to defendants' counsel regarding the
discovery responses received from AIU Insurance Company (AIU).  See Docket
No. 19-5.  The letter noted that AIU asserted various claims of privilege in its
responses and it also redacted documents according to privilege, yet AIU had

not given plaintiff a privilege log.  Docket No. 19-5 at 1.  AIU then gave a privilege log to plaintiff on June 11.  Docket No. 19-6.

Plaintiff's June 6 letter also noted that AIU produced no documents pursuant to RFP No. 7.  <u>See</u> Docket No. 19-5 at 2-3.  Plaintiff expressed the belief that AIU had at least some documents confirming that plaintiff's claim existed and asked AIU to produce those documents.  <u>Id.</u> at 3.

### b.    AIU's Response to Plaintiff's Claimed Deficiencies

On June 27 counsel for AIU wrote to plaintiff asking for confirmation that plaintiff now had AIU's privilege log.  Docket No. 19-8.  As to the concerns expressed by plaintiff as to AIU's responses to interrogatories and RFP, counsel stated that the discovery responses provided were complete.  Counsel explained that Walmart Claims did not report plaintiff's claim to AIU until the bad faith suit against AIU was filed in this court.  <u>Id.</u>

### 2.    Walmart Claims' Discovery

### a.    Plaintiff's Assertion of Deficiencies

On June 16, plaintiff's counsel wrote to defendants' counsel regarding the discovery responses received from Walmart Claims.  Docket No. 19-7. Plaintiff contested Walmart Claims' assertion of privilege in the redaction of documents responsive to RFP no. 7.  <u>Id.</u> at 1-3.

Plaintiff also contested Walmart Claims' refusal to provide full information about reserves that had been set on plaintiff's claim in response to interrogatory no. 10.  <u>Id.</u> at 3-5.  Finally, plaintiff objected to Walmart Claims'

refusal to provide all information in connection with interrogatories 19-20, and 22. Id. at 7-8.

### b.  Walmart Claims' Response to Plaintiff's Assertion of Deficiencies

On June 27 Walmart Claims' counsel wrote to plaintiff explaining his legal basis for the privilege redactions in the claims file in regard to RFP no. 7. See Docket No. 19-9 at 1-2.  Counsel also explained the basis for his assertion of work product doctrine protection in connection with interrogatory no. 10. Id. at 3.  As to interrogatory nos. 19-20 and 22, counsel wrote that Walmart Claims was not withholding any information pursuant to any objection and that it was working to supplement its responses to interrogatory nos. 20 and 22. Id. at 4.

### 3.  The Meet & Confer

Following the above exchange of letters, counsel held a meet and confer via telephone on June 10 as to AIU's discovery responses and on June 24 at to Walmart Claims' discovery responses.  Docket No. 19 at 2; Docket No. 21-1 at 2.  Defendant AIU states that plaintiff never expressed any dissatisfaction with the privilege log produced by AIU and did not otherwise attempt to meet and confer regarding that log.  Docket No. 21-1 at 2.  AIU's privilege log was produced to plaintiff one day after the meet and confer (it was produced June 11—see Docket No. 19-6).  The lawyer for both AIU and Walmart Claims is the same, so if plaintiff perceived any deficiencies with AIU's privilege log, she could have raised those concerns at the June 24 meet and confer.  AIU alleges plaintiff never did.  Id.

Following the meet and confer on June 24, defendant Walmart Claims produced additional discovery, additional discovery responses, and a supplemental privilege log.  Id. at 2-3.  Five pages of this discovery was filed prior to plaintiff filing the present motion.  Id. at 2.  The remaining discovery, discovery responses, and supplemental privilege log were produced after plaintiff filed her motion to compel.  See Docket No. 17; compare, Docket No. 21-1 at 2-3.

## DISCUSSION

### A.    Requirement to Meet and Confer

Before a party may file a discovery motion seeking to compel discovery, the party is required to meet and confer with the party from whom the discovery is requested in a good faith effort to resolve the discovery dispute. Fed. R. Civ. P. 26(c)(1) and 37(a)(1); DSD LR 37.1.

Defendants argue that plaintiff never fulfilled the meet and confer requirement as to (1) AIU's privilege log and the adequacy thereof and (2) interrogatory no. 21.  Plaintiff's written communications regarding perceived deficiencies with defendants' responses to discovery do not mention interrogatory no. 21.  See Docket Nos. 19-5 & 19-7.  Furthermore, there is no written communication dated June 11 (the date AIU gave plaintiff its privilege log) or later indicating plaintiff perceived any deficiencies with AIU's privilege log.

Plaintiff's counsel's affidavit in support of her motion to compel never specifically states that plaintiff notified AIU of any deficiencies with its privilege

6

log once plaintiff received that document.  See Docket No. 19.  In her motion to compel, plaintiff alleges that AIU's privilege log included "various redactions based upon the attorney client and work product privileges which were contrary to South Dakota law."  Docket No. 18 at 5.  But there is no evidence plaintiff ever told AIU she believed the redactions were improper.

Plaintiff asserts that defendants' June 27 letters indicate the parties had reached an impasse as to all issues presented in plaintiff's motion to compel. Docket No. 19 at 3.  The court disagrees with this characterization of defendants' letter.

As to defendant Walmart Claims, defense counsel wrote on June 27 that it would be supplementing its responses to interrogatory nos. 19-20 & 22.  See Docket No. 19-9 at 4.  In the same letter Walmart Claims indicated its intent to supplement its production of documents pursuant to RFP no. 7.  Id.  This letter did not "confirm[ ] that the parties had reached an impasse on the discovery issues" as alleged by plaintiff in her counsel's affidavit.  See Docket No. 19 at 3, ¶ 9.  Plaintiff filed the instant motion to compel before receiving the additional discovery and responses promised in that June 27 letter.

The court concludes that plaintiff failed fulfill the meet and confer requirement with regard to interrogatory 21—which was never mentioned--or with regard to any perceived deficiencies with AIU's privilege log—again, which deficiencies were never mentioned.  The court will not consider these two issues.  Plaintiff's motion to compel as to interrogatory no. 21 and as to AIU's privilege log is denied.

**B.     Scope of Discovery**

Federal Rule of Civil Procedure 26(b)(1) sets forth the scope of discovery

in civil cases pending in federal court:

> *Scope in General.*  Unless otherwise limited by court order, the
> scope of discovery is as follows: Parties may obtain discovery
> regarding any nonprivileged matter that is relevant to any party's
> claim or defense and proportional to the needs of the case,
> considering the importance of the issues at stake in the action, the
> amount in controversy, the parties' relative access to relevant
> information, the parties' resources, the importance of the discovery
> in resolving the issues, and whether the burden or expense of the
> proposed discovery outweighs its likely benefit.  Information within
> this scope of discovery need not be admissible in evidence to be
> discoverable.

See FED. R. CIV. P. 26(b)(1).

"An interrogatory may relate to any matter that may be inquired into

under Rule 26(b)." FED. R. CIV. P. 33(a)(2).  Interrogatories must be answered

unless the opposing party objects stating specific grounds for the objection.  Cf.

id. at (b)(4).  Interrogatories must be proportional to the needs of the case, as

must all discovery requests under Rule 26(b)(1).  FED. R. CIV. P. 33 advisory

committee's note to 2015 Amendment.

A party requesting the production of documents "must describe with

reasonable particularity each item or category of items to be inspected." FED.

R. CIV. P. 34(b)(1)(A).  The responding party must allow inspection, produce

copies, or object and provide a basis for that objection.  Id. at (b)(2)(B)-(C).  "A

party must produce documents as they are kept in the usual course of

business or must organize and label them to correspond to the categories in

8

the request." Id. at (b)(2)(E)(i). "The production must then be completed no later than the time for inspection specified in the request or another reasonable time specified in the response." Id. at (b)(2)(B).

The scope of discovery under Rule 26(b) is extremely broad. See 8 Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 2007, 36-37 (1970) (hereinafter "Wright & Miller"). The broad scope of discovery ensures "[m]utual knowledge of all the relevant facts . . . essential to proper litigation. To that end, either party may compel the other to disgorge whatever facts he has in his possession." 8 Wright & Miller, § 2007, 39 (quoting Hickman v. Taylor, 329 U.S. 495, 507-08, 67 S. Ct. 385, 392, 91 L. Ed. 2d 451 (1947)). The Federal Rules distinguish between discoverability and admissibility of evidence. FED. R. CIV. P. 26(b)(1), 32, and 33(a)(2) & (c). Therefore, the rules of evidence assume the task of keeping out incompetent, unreliable, or prejudicial evidence at trial. These considerations are not inherent barriers to discovery, however.

**C.    Walmart Claims' Responses to Interrogatory Nos. 19-20 & 22**

Interrogatory No. 19 requested discovery as follows:

Identify any communications you had with Plaintiff's treating physicians, [sic] regarding the injuries at-issue [sic] in this litigation, including:

(ddd)  the name of the individual you spoke with;
(eee)  the date of the communication;
(fff)   the documents or information provided to the individual, [sic] and
(ggg)  describe in detail the discussion.

<u>See</u> Docket No. 19-3 at 15-16.

After stating certain boilerplate objections, Walmart Claims responded:

> Defendant assumes this request does not consider medical records received by Defendant to constitute communication with Plaintiff's treating physicians. Accordingly, prior to the partial denial of Plaintiff's claim, Defendant sent and/or received letters from Dr. Lance Doeden, Dr. Robert MacLachlan, Dr. Troy Gust, and Dr. Robert Woodruff. Defendant also communicated with administrative representatives of Plaintiff's treating physicians. Pursuant to Fed. R. Civ. P. 33(d), the date and substance of such communications can be found in WM_BECHARD_0000002-35, 36-56, 820-3582, 401306098.

<u>See</u> Docket No. 21-2 at 2.

Walmart Claims' supplemental response was filed on July 14, 2025. <u>See</u> Docket No. 21 at 2; Docket No. 21-1 at 2, ¶ 11. This was 7 days after plaintiff filed the instant motion to compel, but in keeping with Walmart Claims' promise as stated in its June 27 letter that it would supplement its discovery responses in the coming days. <u>See</u> Docket No. 19-9 at 4. As noted previously, plaintiff chose to file her motion to compel without waiting for this supplemental discovery.

Plaintiff's only response to Walmart Claims' supplemental answer to interrogatory no. 19 is to state generally that defendant's production of documents does not render the interrogatory moot. <u>See</u> Docket No. 25 at 17. True. But Rule 33(d) of the Federal Rules of Civil Procedure does allow a party to produce a document if the answer to the interrogatory may be determined by examining the document. <u>See</u> Fed. R. Civ. P. 33(d).

Defendant Walmart Claims gave plaintiff the specific BATES reference numbers of the documents that show the date and substance of any

10

communications.  Docket No. 21-2 at 2.  Plaintiff does not say what information, specifically, she is missing after looking at the documents Walmart Claims referred her to.  The court denies plaintiff's motion to compel any further answer to interrogatory no. 19.

The same is true for interrogatories 20 and 22.  Walmart Claims provided supplemental discovery responses for these two interrogatories after plaintiff filed the instant motion, as Walmart Claims had said it would do before the motion was filed.  See Docket No. 21-2 at 2-3; Docket No. 19-9 at 4.  In her reply brief, plaintiff provides no specific objection to these supplemental responses to interrogatory nos. 20 & 22 other than the generalization that provision of a document does not render an interrogatory moot.  See Docket No. 25 at 17.

Walmart Claims has followed Fed. R. Civ. P. 33(d) and plaintiff has not specified for the court in which way Walmart Claims' supplemental response is lacking.  The court denies plaintiff's motion to compel any further answer to interrogatory nos. 20 and 22.

### D.    Walmart Claims' Response to Interrogatory No. 10

Plaintiff's interrogatory no. 10 asked:

Up until the commencement of this litigation, state the reserves that were set by your company in response to Plaintiff's claim for benefits under the policy, when the reserves were set, when/if the reserves changed and the names and employment position of the person(s) involved in the setting of the reserve amount.

See Docket No. 19-3 at 8.

11

Walmart Claims provided the following original response, which was not supplemented later:

> Defendant objects to Interrogatory No. 10 to the extent it seeks information protected by the attorney client and/or work product privileges. Specifically, reserves prepared in anticipation of trial or litigation are protected by the work product privilege. *See Simon v. G.D. Searle & Co*, 816 F.2d 397 (1987). Subject to and without waiving this objection, Defendant will identify non-privileged reserves set forth below but will not identify payments made to defense counsel. Defendant designates this response as confidential, pursuant to the Protective Order (Doc. #14) entered in this matter:

Id. at 8-9.

Walmart Claims then provided a table that identified the date, paycode, amount, and the name of the individual setting the reserve amount beginning March 11, 2022, (plaintiff's injury happened March 5, 2022) and extending through February 17, 2025 (plaintiff filed her complaint in this matter January 7, 2025). Id. at 8-10. The table includes 22 discrete entries. Id.

Plaintiff states that Walmart Claims' response is insufficient because they have not indicated reserves set for payments made to defense counsel during plaintiff's worker's compensation proceedings before the SD DOL. See Docket No. 18 at 15. Plaintiff claims a right to know payments Walmart Claims made to its lawyer so that plaintiff can "establish the extent of the attorney's involvement in the adjusting and evaluation of Plaintiff's workers' compensation claim." Id.

Plaintiff cites to no legal authority that she is *entitled to know* how much Walmart Claims paid its lawyer during the workers compensation administrative proceedings. Instead, she cites authority generally about the

12

relevancy of reserves information.  Id. at 16; Docket No. 25 at 16-17.  Plaintiff also argues the work product doctrine does not apply because the doctrine protects the attorney's thought processes and legal recommendations and the reserves do not reflect these protected forms of information.  See Docket No. 18 at 16.

It is first and foremost the movant's burden in a discovery dispute to demonstrate that the information sought is relevant.  E.E.O.C. v. Woodmen of the World Life Ins. Society, No. 8:03CV165, 2007 WL 1217919 at *1 (D. Neb. March 15, 2007) (citing Hofer v. Mack Trucks, Inc., 981 F.2d 377, 380 (8th Cir. 1993)).  "Mere speculation that information might be useful will not suffice; litigants seeking to compel discovery must describe with a reasonable degree of specificity, the information they hope to obtain and its importance to their case."  Id. (citing Cervantes v. Time, Inc., 464 F.2d 986, 994 (8th Cir. 1972)). If the movant carries that burden to show relevancy, the burden shifts to the party opposing discovery to show some valid reason why the discovery should not be had.

Here, plaintiff has established that information about reserves is generally relevant in a bad faith action.  Docket No. 25 at 16-17.  But Walmart Claims _agrees_ with that general proposition and has provided nearly all information about the reserves set in plaintiff's claim.  See Docket No. 19-3 at 8-10.  Plaintiff argues that work product doctrine does not apply to the reserves pertinent to defense counsel during the workers comp proceedings, but ignores her burden to first establish relevancy of this specific information.

13

In order to prove a bad faith claim, plaintiff must show that Walmart Claims had no reasonable basis for denying her claim for workers compensation insurance benefits, and that Walmart Claims acted with knowledge or a reckless disregard as to the lack of a reasonable basis for the denial of benefits.  See Sawyer v. Farm Bureau Mut. Ins. Co., 619 N.W.2d 644, 649 (S.D. 2000).  Knowing how much money Walmart Claims paid its attorney during the workers comp proceedings does not bear on this issue.

Nor does knowing this issue shed light on how involved (or uninvolved) defense counsel was during the DOL proceedings.  If a large sum of money was paid, it could mean that Walmart Claims was involving their attorney a lot.  It could also mean Walmart Claims' attorney was pleading with the client to please, please settle this claim as liability was evident.  It could also mean the attorney was very detail-oriented or not, very experienced and thereby not needing to micromanage the file, or relatively green and needing to research everything.  It could mean the attorney's hourly rate was high or low. Nothing—or very little—can be discerned from simply knowing the amount of money set in the reserves for defense counsel.

Plaintiff also argues that Walmart Claims has impliedly waived any attorney-client privilege as to communications with counsel during the pendency of the SD DOL proceedings.  See Docket No. 18 at 15-16.  Plaintiff urges this as an additional ground to overrule defendant's objection to providing the reserve information as to defense attorney's fees.  Id.  The court addresses and rejects this argument below in section E.

14

The court denies plaintiff's motion to compel a further response from Walmart Claims as to interrogatory no. 10.  Plaintiff has failed to demonstrate relevancy of the information sought beyond what Walmart Claims has already provided.

**E.     RFP No. 7**

Plaintiff's RFP no. 7 asked:

> Produce a copy of the claims file for the at-issue claim, including any claim forms completed, correspondence to and from your insured/claimant, correspondence to and from any other person or entity related to the claim, and any internal business notes, log entries, roundtable table [sic] notes, jurisdictional information, valuations or reserves related to the claim.

See Docket No. 19-2 at 4; Docket No. 19-4 at 4.

Walmart Claims produced documents pursuant to this request, but redacted various entries and supplied a privilege log, then supplemented that privilege log.  See Docket No. 19-4 at 4; Docket No. 19-9; Docket No. 21-3.

Walmart Claims' privilege log identifies redacted documents by BATES number, the date of the document, the author and recipient of the document, the general subject of the document, and the type of privilege being claimed.  See Docket No. 21-3.  The supplemental privilege log was supplied to plaintiff on July 21, 2025, 14 days after plaintiff filed the instant motion to compel.  Docket No. 21-1 at 3, ¶ 14.

The redactions are primarily as to documents dated August 16, 2023, to and after the date of the initiation of this lawsuit.  See e.g. Docket No. 19-10 and Docket No. 21-3.  Plaintiff filed her petition with the SD DOL on June 29, 2023, and she filed her complaint in this court January 7, 2025.  The lion's

share of the redactions are during the time when administrative litigation

before the SD DOL or civil litigation in this court were pending.  There are five

entries that do not fall within this time frame.  Two are for documents created

March 23, 2022.  See Docket No. 19-10 at 5 (item #18), and at 8 (item #39).[3]

Three are for documents created on February 27, 2023.  See Docket No. 21-3

(item # 63-65).

Plaintiff argues that the redactions made for attorney-client

communications during the pendency of plaintiff's administrative action before

the SD DOL are not protected because Walmart Claims has impliedly waived

the privilege by asserting the affirmative defense of advice of counsel.  See

Docket No. 18 at 12.

The court notes that neither defendant raised an affirmative

defense of reliance on advice of counsel in their answer.  See Docket No.

6 at 6-7.  Walmart Claims was asked in an interrogatory if it was relying

on advice of counsel to support any of its actions and Walmart Claims

said it was not.  See Docket No. 19-3 at 4-5.

But South Dakota law does not require an explicit assertion of an

advice-of-counsel defense.  Hurley v. State Farm Mut. Auto. Ins. Co.,

4:10-CV-04165-KES, 2013 WL 365234 at *2 (D.S.D. Jan. 30, 2013)

(citing Bertelsen v. Allstate Ins. Co., 796 N.W.2s 685, 703 (S.D. 2011)).

The privilege can also be waived impliedly when the client does some

affirmative act indicating reliance on counsel's advice that puts the

_____

[3] Defendant indicates these are duplicates.  Docket No. 21 at 7 n.6.

protected information at issue by making it relevant to the case.  Id. at *2-3 (citing Bertelsen, 796 N.W.2d at 702).  The analysis of whether a party has impliedly waived the attorney-client privilege by relying on advice of counsel begins with a presumption in favor of preserving the privilege.  Bertelsen, 796 N.W.2d at 703.  Plaintiff relies on Hurley in asserting that defendants have impliedly waived attorney client privilege in this case.  The court disagrees.

In Hurley, the defendant insurance company had paid the plaintiff nothing on his claim prior to the start of bad faith/contract litigation.  Id. at *1.  After the plaintiff filed his complaint in federal court alleging breach of contract and bad faith, defendant paid the plaintiff $540,000.  Id.  Plaintiff proffered the depositions of four of defendant's employees in which the employees testified they relied heavily on counsel's advice in deciding to pay the post-complaint money to the plaintiff.  Id. at *3.  The district court held that by so testifying, defendant had "injected its attorney's advice into this case by relying, quite heavily, on the advice of counsel in deciding to increase the amount paid on Hurley's claim."  Id.

Here, plaintiff points to no such evidence.  Defendants have not affirmatively asserted the defense of advice-of-counsel.  Plaintiff supplied four depositions of employees of defendants, but in none of that testimony did any employee state—as was done in Hurley—that they relied on advice of counsel in either denying or paying plaintiff's claim.

The South Dakota Supreme Court has stated that merely denying bad faith or asserting good faith does not impliedly waive the privilege. Bertelsen, 796 N.W.2d at 703. The key issue is whether the insurer, "in attempting to demonstrate that it acted in good faith, actually injected its reliance upon such [legal] advice into the litigation. The key factor is reliance of the client upon the advice of [its] attorney." Id. The burden of establishing that Walmart Claims waived the privilege rests squarely on plaintiff. Andrews v. Ridco, Inc., 863 N.W.2d 540, 547 (S.D. 2015) (the burden of establishing waiver occurred rests with the party asserting waiver).

Plaintiff relies on a notation in the claims file by a Walmart Claims employee named Quinten Bowman stating that he would seek "advice or guidance from the defense attorney on the next steps on this claim," but no deposition or affidavit from Mr. Bowman was submitted to the court explaining what this notation meant and whether he ever followed up on his note. The notation was made on March 23, 2022, shortly after plaintiff's injury. There is no such evidence pointed to by plaintiff from the claims file in and around the time Walmart Claims determined plaintiff's neck injury was not compensable in fall 2022.

Other Walmart Claims employees whose depositions *are* of record do not invoke the advice-of-counsel defense based on this note. Renee Wright, Walmart Claims' Rule 30(b)(6) designee, testified that she did not know if Mr. Bowman ever contacted counsel pursuant to the note. See

18

Docket No. 24-1 at 71 (Wright depo. at 283-84). She testified she had no knowledge as to whether in-house counsel was involved in the handling of plaintiff's claim. Id.

Plaintiff has produced no evidence defendants have taken an affirmative act to impliedly inject their attorney's advice into this litigation and made it relevant. Reliance on the attorney's advice to explain why Walmart Claims acted as it did is the "key factor" in the waiver analysis and it is missing in this case. Bertelsen, 796 N.W.2d at 703. At this point, then, there is no implied waiver of the attorney-client privilege. One does not waive the attorney-client privilege simply by asserting the privilege through redactions in the production of a claims file. Andrews, 863 N.W.2d at 548-49 (rejecting plaintiff's assertion in a bad faith action that insurer's act of redacting portions of the claims file alone resulted in an implied waiver of the attorney-client privilege).

Noteworthy is the fact that plaintiff does not dispute that the communications at issue are attorney-client privileged. Nor does plaintiff take issue with the sufficiency of the Vaughn index provided by Walmart Claims. Rather, plaintiff asserts the privilege does not apply because Walmart Claims has impliedly *waived* the privilege. Plaintiff's assertion of waiver is based solely on the fact that defendant was consulting with its attorney during the pendency of handling her claim. Plaintiff argues that, at a minimum, this court should conduct an *in camera* review of the documents.

But an *in camera* review of the documents would only serve to indicate whether the redacted portions are subject to the attorney-client privilege in the first instance—*something that plaintiff is not disputing here.* This is a significant difference from the facts of this case and those of <u>Andrews</u>, 863 N.W.2d at 550-51, in which the very presence of the privilege was also being contested.

Review of the documents will *not* indicate to this court whether Walmart Claims *waived* the privilege by asserting advice-of-counsel as a defense. That waiver can only be evident from the pleadings submitted by Walmart Claims or by the testimony of its agents, neither of which support a claim of waiver at this juncture.

Nevertheless, out of an abundance of caution, the court will order Walmart Claims to provide the unredacted documents in their initial and supplemental privilege log to the court for *in camera* review. The court will file an order after review indicating whether it found any redactions to be unsupported or indicative of waiver.

Plaintiff also argues that Walmart Claims continued investigating plaintiff's claim during the pendency of the SD DOL proceedings and that investigatory materials are not protected by the work product privilege. <u>See</u> Docket No. 18 at 14 (citing <u>Black v. Pilot Travel Ctrs, LLC</u>, No. CIV. 09-4170-KES, 2011 WL 1828039 (D.S.D. May 12, 2011). That is true only for investigative materials prepared in the ordinary course of business, not when actual litigation is not only a possibility but has

20

become a reality. <u>Black</u> 2011 WL 1828039 at \*3. But even assuming that Walmart Claims continued investigating plaintiff's claim while the SD DOL proceedings were pending, and even if such materials are generally discoverable, this does not lead to the irrefutable conclusion that redacted portions of the claims file referring to communications with counsel are necessarily investigative materials. The court will evaluate this argument, too, when it reviews the redactions *in camera*.

**F.    Attorney's Fees**

Plaintiff seeks an award of attorney's fees for making the present motion to compel. Rule 37 allows an award of attorney's fees as sanctions for having to make a motion to compel, but cautions that such sanctions should not be awarded when the opposing party's nondisclosure was substantially justified. <u>See</u> Fed. R. Civ. P. 37(a)(5)(A)(ii).

Here, plaintiff moved to compel on seven separate issues. The court found plaintiff failed to satisfy the meet and confer requirement as to two of those issues, denied the motion to compel as to four issues, and only partially granted the motion on the final issue. Furthermore, the court finds that plaintiff filed the motion to compel before waiting to receive additional discovery responses and documents that had been promised to plaintiff in Walmart Claims' June 27 letter. Waiting to receive this promised additional discovery before making the motion would have saved time, expenditure of effort, and judicial resources—

21

which is what the meet and confer requirement is intended to address. The court finds plaintiff is not entitled to attorney's fees under Rule 37 under these facts.

## CONCLUSION

Based on the foregoing facts, law and analysis, the court grants in part and denies in part plaintiff's motion to compel [Docket No. 17] as follows:

--plaintiff's motion to compel as to AIU's privilege log is denied;

--plaintiff's motion to compel as to interrogatory nos. 19-22 is denied;

--plaintiff's motion to compel as to interrogatory no. 10 is denied; and

--plaintiff's motion to compel Walmart Claims as to RFP no. 7 is granted

in part; Walmart Claims shall submit to this court via email within

14 days unredacted copies of each portion of its claims file that

was redacted pursuant to an assertion of attorney client privilege

along with a copy of the same portions of the claims files showing

the redactions as they were produced to plaintiff.

Plaintiff's request for attorney's fees pursuant to Rule 37 is denied.

## NOTICE OF RIGHT TO APPEAL

Pursuant to 28 U.S.C. § 636(b)(1)(A), any party may seek reconsideration of this order before the district court upon a showing that the order is clearly erroneous or contrary to law. The parties have fourteen (14) days after service of this order to file written objections unless an extension of time for good cause is obtained. FED. R. CIV. P. 6(b)(1), 72(a). Failure to file timely objections will result in the waiver of the right to appeal this ruling. United States v.

Becerra, 73 F.4th 966, 972-73 (8th Cir. 2023).  Objections must be specific in order to require review by the district court.  Thompson v. Nix, 897 F.2d 356, 357-58 (8th Cir. 1990).

DATED this 28th day of August, 2025.

BY THE COURT:

VERONICA L. DUFFY

United States Magistrate Judge